## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ANA LEMUS, *on behalf of her minor son, O.C.L., and on her own behalf,* <br><br>     *Plaintiff,* <br><br> v. <br><br> **DISTRICT OF COLUMBIA INTERNATIONAL CHARTER SCHOOL,** <br><br>     *Defendant.* | Case No. 20-cv-3839 (RCL) |
| **DISTRICT OF COLUMBIA INTERNATIONAL CHARTER SCHOOL,** <br><br>     *Plaintiff,* <br><br> v. <br><br> **ANA LEMUS,** <br><br>     *Defendant.* | Case No. 21-cv-0223 (RCL) |

## <u>MEMORANDUM OPINION</u>

Ana Lemus is the mother of O.C.L., her school-age son who suffers from learning disabilities and is not a native English speaker. O.C.L. attended the District of Columbia International Charter School ("DCI") from sixth grade until his expulsion in the eighth grade for threatening a teacher. While at DCI, O.C.L.'s academics suffered and his test scores ultimately fell below his pre-DCI scores. After his expulsion, Lemus administratively appealed to the Office of the State Superintendent of Education. Lemus sought both (1) a reversal of the expulsion and (2) compensatory education based on the denial of a free appropriate public education.

1

These two actions involve appeals from the results of that administrative appeal. In *Lemus v. District of Columbia International Charter School ("Lemus v. DCI" or "the expulsion action")*, No. 20-cv-3839-RCL, Lemus appeals the administrative determination that O.C.L.'s expulsion was proper and alleges that DCI violated Title VI of the Civil Rights Act. In the related case *District of Columbia International Charter School v. Lemus ("DCI v. Lemus" or "the FAPE action")*, No. 21-cv-223-RCL, DCI appeals the administrative determination that O.C.L. was denied a free adequate public education ("the FAPE action").

## I. BACKGROUND

### A. Individuals With Disabilities Education Act

"Under the Individuals with Disabilities Education Act (known as 'IDEA'), states and territories, including the District of Columbia, that receive federal educational assistance must establish 'policies and procedures to ensure,' among other things, that 'free appropriate public education,' or 'FAPE,' is available to disabled children." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 518 (D.C. Cir. 2005) (quoting 20 U.S.C. § 1412(a)(1)(A)). Under the IDEA, school districts "must ensure that '[a]ll children with disabilities residing in the State . . . regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated.'" *Id.* at 518–19 (quoting 20 U.S.C. § 1412(a)(3)(A)). When a child with a disability is identified, an Individualized Education Program Team ("IEP Team")—a group including the child's teachers and parents—creates an Individualized Education Program ("IEP") to provide "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Id.* at 519 (quoting *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 690 (1982)); 20 U.S.C. §§ 1412(a)(4), 1414(d). For those who believe their disabled child's rights have been violated, the

IDEA also provides a right to appeal to a local educational agency. 20 U.S.C. § 1415. An IEP can be changed one of two ways: either during the student's annual IEP team meeting or via a "written document to amend or modify" agreed upon by the school and the student's parent. 34 C.F.R. § 300.324(a)(4), (6).

### B. O.C.L.'s Educational History

Lemus is a D.C. resident and the mother of O.C.L., her minor son. Lemus Am. Compl. ¶ 2, *Lemus v. DCI,* No. 21-cv-223-RCL, ECF No. 13. O.C.L. is a teenager and qualifies as a "child with a disability" under the IDEA, 20 U.S.C. § 1415. *Id.* Lemus and her son were both born in Honduras and are both native Spanish speakers. *Id.* Lemus attests that she has "little ability to speak or understand English." *Id.* ¶ 6.

After a traumatic three-month journey to the United States, O.C.L. arrived in D.C. and enrolled as a third grader at Tubman Elementary School ("Tubman"). *Id.* ¶ 8. When he began at Tubman, O.C.L. did not speak or understand English. *Id.* By his fifth-grade year, Tubman determined that O.C.L. was "eligible for special education services" and had an intellectual disability. *Id.* ¶¶ 9–11. The Tubman IEP team determined that O.C.L. required 19 hours of supplemental special education each week, to be provided "outside the general education classroom." *Id.* ¶ 11. These 19 hours constituted O.C.L.'s IEP.

After graduating Tubman, O.C.L. enrolled in DCI as a sixth grader in August 2017.[1] *Id.* ¶ 3; DCI Compl. ¶ 10, *DCI v. Lemus,* 21-cv-223-RCL, ECF No. 1. DCI is a "school of choice," which means parents voluntarily enroll their children each year. DCI Compl. ¶ 3. Immediately upon O.C.L.'s enrollment, DCI reduced both his specialized instruction hours and his hours outside of the general education setting. Lemus Am. Compl. ¶¶ 14–15. On September 27, 2017, DCI

---

[1] While Lemus's complaint originally refers to O.C.L. enrolling in August 2016, this appears to be a typographic error inconsistent with the rest of the dates in her narrative.

proposed changing O.C.L.'s special education hours outside the general education setting from 19 hours a week to "60 hours per month" and introducing "daily inclusion support." DCI Compl. ¶ 12. DCI proposed this change by issuing an IEP Amendment Proposed Change Form and later a Standard IEP Amendment Form, each of which Lemus signed. *Id.* ¶ 13. DCI issued an Amended IEP on December 4, 2017. *Id.* ¶ 14.

During his time at DCI, O.C.L.'s IEP was amended five more times. DCI Compl. ¶¶ 16–45. Lemus signed the Standard IEP Amendment Form each time. *Id.* By eighth grade, Lemus alleges O.C.L. was receiving only five hours of specialized instruction each week, solely within the regular, general education setting. Lemus Am. Compl. ¶¶ 16–17. DCI, on the other hand, alleges that O.C.L.'s final IEP recommended (and that O.C.L. therefore received) 38.5 hours a month of specialized instruction inside the general education setting, 23 hours a month of specialized instruction outside the general education setting, and 120 minutes a month of "behavior support services." DCI Compl. ¶ 41. Regardless of the exact number, by the eighth grade, O.C.L.'s test scores on annual district-wide testing had "declined *below* the levels he had achieved [three] years earlier at Tubman." Lemus Am. Compl. ¶¶ 16–17 (emphasis added). In other words, after attending DCI and following the IEP that DCI staff developed, O.C.L.'s test scores got worse.

DCI "first attempted to expel" O.C.L. when he was in the seventh grade. Lemus Am. Compl. ¶ 22. But a Manifestation Determination Review ("MDR")[2] determined that O.C.L.'s objectionable conduct was caused by his disabilities and recommended a Functional Behavioral Assessment ("FBA") and a Behavioral Intervention Plan ("BIP"). *Id.* ¶ 23. The IEP team also identified three suspected disabilities: an intellectual disability, a history of multiple head injuries, and a history of behavioral issues. *Id.*

---

[2] An MDR is a meeting where an IEP team determines whether a student's objectionable conduct was either caused by or substantially related to his disabilities. Lemus Am. Compl. ¶ 22.

On January 28, 2020, O.C.L. told DCI staff that he would kill his eighth-grade math teacher. *Id.* ¶¶ 49, 55. He was immediately suspended, and an MDR was scheduled on February 5, 2020. *Id.* ¶ 59. Lemus was present at this MDR. *Id.* ¶ 113. Because of Lemus's limited English skills, an office assistant translated for her at the meeting. *Id.* ¶¶ 122–23. During the MDR, the IEP team considered both statements from students in the math class and statements from the DCI staff to whom O.C.L. made his threat. *Id.* ¶ 60. Charles Jenkins (who is unidentified in the complaint but appears to be a psychologist) joined the meeting by phone to opine on whether he thought O.C.L.'s conduct was a manifestation of his ability. *Id.* ¶ 61. Jenkins instructed the IEP team at the MDR that the traumatic brain injury was the only disability the team could consider and that O.C.L.'s threat was not a manifestation of a traumatic brain injury. *Id.* ¶¶ 63, 66. The team adopted Jenkins's opinion and immediately moved to an expulsion hearing. *Id.* ¶¶ 70–71. O.C.L. was ultimately expelled. *Id.* ¶ 87.

## C. Procedural History

### i. *Due Process Hearings*

On July 30, 2020, Lemus filed a due process complaint with the Office of the State Superintendent of Education ("OSSE") for the District of Columbia. Lemus Am. Compl. ¶ 73; DCI Compl. ¶ 47. Lemus sought not only a reversal and expungement of the expulsion, but also compensatory education for O.C.L.'s entire tenure at DCI, alleging that DCI failed to provide O.C.L.'s required free adequate public education. Lemus Am. Compl. ¶ 74. Specifically, Lemus stated claims for: (1) "denial of FAPE throughout the course of the three school years that [O.C.L.] attended [DCI]"; (2) "violation[s] of [O.C.L.'s] rights under Federal and D.C. law, when [DCI]

expelled him"; and (3) "language-based and national origin-based discrimination against both [O.C.L.] and Mrs. Lemus throughout [O.C.L.'s] stay at [DCI]." *Id.* ¶ 87.

The hearing officer separated Lemus's claims about the expulsion from her claim alleging failure to provide FAPE. *Id.* ¶ 75. Because a complaint involving expulsion is entitled to expedited treatment, the expulsion claims were heard first. *Id.* ¶ 89. OSSE held hearings on O.C.L.'s expulsion in September 2020. *Id.* ¶ 90. While Lemus provides significant detail regarding the hearing process itself during her complaint, the merits of the hearing officer's decision on the expulsion is irrelevant to the motions before this Court in the expulsion action, *Lemus v. DCI.* On October 6, 2020, the Office of Dispute Resolution issued a Hearing Officer's Determination and Administrative Order ("HOD"), which found that DCI had not violated the IDEA when it expelled O.C.L. *Id* ¶ 91.

As to the FAPE claim, DCI first moved to dismiss, arguing that the allegations were time-barred. DCI Compl. ¶¶ 52–53. Complaints under the IDEA must be raised within "[two] years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint," subject to two specific exceptions that Lemus did not assert. 20 U.S.C. § 1415(f)(3)(c); DCI Compl. ¶ 49. The hearing officer found that DCI had misled Lemus because, among other things, the IEP amendment forms that supposedly put her on notice were not in Spanish, so the statute of limitations had not run out. DCI Compl. ¶ 54.

At the OSSE due process hearings in October 2020, DCI presented multiple witnesses. DCI Compl. ¶ 56. All these witnesses worked at DCI and had "actual experience educating the student." *Id.* These witnesses were certified as experts. *Id.* Lemus presented one expert witness in response: Dr. Jay Lucker, a professor at Howard University and a Director of Howard's Five-Year Accelerated Master's Degree Program in Speech-Language Pathology. *DCI v. Lemus*, No. 21-cv-

223-RCL, ECF No. 13-7 at 5.   The hearing officer certified Dr. Lucker as an expert in communications disorders and limited his testimony to "the issue of English language services." *Id.* at 4.

On October 26, 2020, the Office of Dispute Resolution issued a HOD which found that DCI denied O.C.L. FAPE with respect to IEPs dating back to sixth grade. DCI Compl. ¶ 60. The HOD ordered three remedies:

> (1) [DCI] shall fund a total of 100 hours of independent tutoring services for [O.C.L.] in Reading, Mathematics, and Written Expression, with no restrictions as to the time of day or deadlines for the completion of such services.
>
> (2) [DCI] shall fund an independent evaluation to determine (1) how much academic growth could be reasonably be expected of [O.C.L.] with an appropriate IEP (i.e., 19 hours/week of specialized instruction outside general education) since December 4, 2017, and (2) what kind and amount of services would put [O.C.L.] in the academic position s/he would have been in had [DCI] provided him/her 19 hours/week of specialized instruction outside general education from December 5, 2017 until February 6, 2020.
>
> (3) Within thirty (30) days of receipt of the independent evaluation, [DCI] shall convene an Multidisciplinary Team meeting to review the evaluation and to determine an appropriate amount of compensatory education services for the lack of an appropriate amount of specialized instruction outside of general education for [O.C.L.] for the period December 5, 2017 to February 6, 2020.

*DCI v. Lemus*, No. 21-cv-223-RCL, ECF No. 13-2.

### ii.  Ana Lemus's Suit

After the declaration that her son's expulsion did not violate the IDEA, Lemus filed her action, the expulsion action, in this Court. *Lemus v. DCI,* No. 20-cv-3839-RCL, ECF No. 1. She sought relief under the IDEA, the Rehabilitation Act, and Title VI. *Id.* In her initial complaint, Lemus named Mary Shaffner, DCI's Executive Director, as the defendant. *Id.* at ¶ 3. Shaffner moved to dismiss, noting that personal capacity suits are not permitted under the IDEA or Title

VI. *Lemus v. DCI*, No. 20-cv-3839-RCL, ECF No. 10 at 4. Lemus then moved to strike or dismiss

Shaffner's motion, seemingly arguing that the defendant in the action was in fact DCI. *Lemus v.*

*DCI*, No. 20-cv-3839-RCL, ECF No. 11 at 3. Perhaps sensing that this argument would fail, Lemus

then filed an Amended Complaint removing Shaffner and adding DCI as a defendant. Lemus Am.

Compl.

DCI, now properly a defendant in Lemus's suit, filed a motion to dismiss the Amended

Complaint for failure to state a claim. Mot. to Dismiss Am. Compl. ("DCI Mot. to Dismiss"), *DCI*

*v. Lemus*, No. 21-cv-223-RCL, ECF No. 15. In its motion, DCI argues (1) that the complaint is

time-barred, (2) that Lemus failed to exhaust administrative remedies as required by the IDEA,

and (3) that the complaint fails to state a Title VI claim. DCI Mot. to Dismiss 4–8.

Lemus, instead of addressing many of the arguments DCI made, next moved to stay all

proceedings. Cross-Mot. to Stay All Proceedings ("Lemus Mot. to Stay"), *Lemus v. DCI*, No. 20-

cv-3839-RCL, ECF No. 17. Lemus argued that the Court should stay her case because: (1) the

IDEA requires DCI to file the administrative record, (2) Local Rule 7(n)(1) requires DCI to file

the administrative record before filing a dispositive motion, and (3) Federal Rule of Civil

Procedure 12(d) mandates that DCI's motion to dismiss be converted to a motion for summary

judgment, since it "presented matters outside the pleadings." Lemus Mot. to Stay 3–5. DCI and

Lemus then began to awkwardly argue past each other. DCI filed a memorandum in opposition to

the cross motion to stay. *Lemus v. DCI*, No. 20-cv-3839-RCL, ECF No. 18 ("DCI's Opp. to Stay").

Lemus inexplicably attempted to reply to DCI's opposition twice. She filed a late reply without

leave, *Lemus v. DCI*, No. 20-cv-3839-RCL, ECF No. 19, and then filed a motion requesting leave

to late file with a different reply, ECF No. 20.[3] Given that DCI failed to allege any prejudice, this court will **GRANT** Lemus's motion to file a late reply.

Accordingly, the two motions pending before this Court in *Lemus v. DCI*, the expulsion action, are DCI's motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) and Lemus's motion to stay.

### iii. DCI's Suit

DCI's suit against Lemus contains similar procedural missteps. DCI filed its complaint against Lemus on January 25, 2021, seeking relief from the October 26, 2020 HOD that found DCI failed to provide O.C.L. a FAPE. DCI Compl. ¶ 1. But DCI failed to serve Lemus until April 29, 2021, outside of the required ninety days. *See DCI v. Lemus*, No. 21-cv-223-RCL, ECF No. 8. Accordingly, Lemus moved to dismiss for lack of timely service. Lemus's Mot. to Quash the Civil Summons and to Dismiss DCI's Compl. for Lack of Jurisdiction ("Lemus Mot. to Dismiss"), *DCI v. Lemus*, No. 21-cv-223-RCL, ECF No. 9. DCI responded, *DCI v. Lemus*, No. 21-cv-223-RCL, ECF No. 11, and Lemus replied, *DCI v. Lemus*, No. 21-cv-223-RCL, ECF No. 14.

DCI also filed a motion to stay OSSE's administrative order during this appeal. Mot. to Stay Admin. Order During Pendency of Appeal ("DCI Mot. to Stay"), *DCI v. Lemus*, No. 21-cv-223-RCL, ECF No. 13-1. It alleged that the hearing officer made numerous mistakes during the FAPE hearings and in his subsequent conclusions. *Id.* at 4. DCI alleges that the hearing officer: (1) improperly delegated determination of the amount of compensatory education, (2) "ignored the testimony of multiple expert witnesses"; (3) "erred in summarily shifting the burden of proof"; and (4) improperly relied on certain testimony. DCI Mot. to Stay 4–6.

---

[3] This filing set off another round of briefing—DCI opposed Lemus's leave to late file, *Lemus v. DCI*, No. 20-cv-3839-RCL, ECF No. 21, and Lemus replied to their opposition, *Lemus v. DCI*, No. 20-cv-3839-RCL, ECF No. 22.

Lemus did not reply to DCI's motion to stay (and could not lest she waive her argument regarding lack of personal jurisdiction). Accordingly, Lemus's motion to dismiss and DCI's motion to stay pending appeal are both ripe.

## II. LEGAL STANDARDS

### A. Motion To Dismiss For Failure To State A Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter that, if accepted as true, states "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court may consider the facts alleged in the complaint, along with "documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice." *K.W. v. District of Columbia*, 385 F. Supp. 3d 29, 36 (D.D.C. 2019). For a plausible claim, a plaintiff must plead enough facts to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a court must accept the factual allegations in the complaint as true, it is not required to credit legal conclusions. *Id.*

### B. Motion To Dismiss For Lack Of Personal Jurisdiction

To avoid dismissal under Rule 12(b)(2), a plaintiff bears the burden of establishing the court's personal jurisdiction over a defendant. *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008). A court must resolve factual discrepancies in favor of the plaintiff. *See Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012) (quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)). "[F]ederal courts lack the power to assert personal jurisdiction over a defendant unless the

procedural requirements of effective service of process are satisfied." *Battle v. District of Columbia*, 21 F. Supp. 3d 42, 44 (D.D.C. 2014) (quoting *Mann*, 681 F.3d at 372)). Rule 4(m) instructs:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

### III. DISCUSSION

#### A. *Lemus v. DCI*

As discussed above, the two ripe motions in *Lemus v. DCI* are DCI's motion to dismiss for failure to state a claim, DCI Mot. to Dismiss, and Lemus's motion to stay pending the filing of the administrative record, Lemus Mot. to Stay. For the reasons below, this Court will **GRANT IN PART** and **DENY IN PART** DCI's motion to dismiss and **DISMISS AS MOOT** Lemus's motion to stay.

##### i. *DCI's Motion To Dismiss Will Be Granted In Part And Denied In Part*

DCI argued that Ana Lemus's complaint should be dismissed for failure to state a claim because it is time-barred, because she failed to exhaust administrative remedies, and because the complaint fails to properly allege facts sufficient to state a Title VI claim. DCI Mot. to Dismiss 4–8. The Court disagrees on the first two arguments, but agrees that Lemus fails to state a Title VI

claim. Accordingly, DCI's motion to dismiss will be **GRANTED IN PART** and **DENIED IN PART**. Lemus's Title VI claims will be **DISMISSED** for failure to state a claim.

      a.  Lemus's Amended Complaint Relates Back To Her Original Complaint And Therefore Was Filed Within The Statute of Limitations

Lemus appeals from the HOD issued on October 6, 2020, and filed her first complaint on December 29, 2020, within the 90-day appeal timeline imposed by the IDEA. *Lemus v. DCI*, No. 20-cv-3839-RCL, ECF No. 1; *see* 20 U.S.C. § 1415(i)(2). But Lemus failed to properly name DCI as a defendant when she filed her first complaint. Once she amended her complaint as of right on March 29, 2021, Lemus Am. Compl., the statutory 90-day IDEA appeal deadline had expired. *See* 20 U.S.C. § 1415(i)(2).

A "prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity." *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010). To prevent such a windfall, Federal Rule of Civil Procedure 15(c)(1)(C) provides a mechanism for an amended complaint against a newly named defendant to "relate back" to the original complaint and thus fall within the 90-day statute of limitations. An amendment naming a new defendant relates back if (1) a claim against a newly named defendant arises out of the conduct, transaction, or occurrence set out in the original pleading; (2) the new defendant "received such notice of the action" within the period provided for by Rule 4(m) for service that "it will not be prejudiced in defending the merit"; and (3) the  new defendant "knew or should have known that the action would have been brought against it" if the plaintiff did not make a mistake concerning the proper defendant's identity. Fed.

R. Civ. Pro. 15(1)(C); *Krupski*, 560 U.S. at 545. Rule 15(c)(1)(C)(ii) asks what the "prospective *defendant* knew or should have known during the Rule 4(m) period." *Krupski*, 560 U.S. at 548.

Here, Lemus's amended complaint sets out the exact same sequence of occurrences set out in the original pleading. *Lemus v. DCI*, ECF No. She sent the complaint directly to the Executive Director of DCI, in her capacity as Executive Director, during the original Rule 4(m) period. *Id.* There is no doubt DCI was on notice that the limitations period had not "passed without any attempt to sue [it]." *Krupski*, 560 U.S. at 550. Nor could DCI have been in doubt that Lemus was plainly attempting to sue it for violations of the IDEA. This Court will not allow DCI to "escape suit during the limitations period only because the plaintiff misunderstood a crucial fact" about the identity of the proper plaintiff. *Id.* This Court finds that the amended complaint relates back to the original complaint and so was filed within the statutory period.

      b.  Lemus Exhausted Her IDEA Claims

"Judicial review is generally unavailable under [the IDEA] unless all administrative procedures have been exhausted." *Clay v. District of Columbia*, 831 F. Supp. 2d 36, 50 (D.D.C. 2011). This exhaustion requirement applies to all claims that seek relief available under the IDEA, "regardless of their statutory basis." *K.W.*, 385 F. Supp. 3d at 41. Because Lemus's Title VI claim at its crux alleges that O.C.L. was denied FAPE because of the failure to provide Spanish translations or English as a Second Language ("ESL") courses, this claim is therefore also subject to the IDEA exhaustion requirement. DCI argues that Lemus's complaint should be dismissed due to a failure to exhaust administrative remedies. Because, in this district, exhaustion is a "non-jurisdictional affirmative defense" DCI "carries the burden of pleading and proving [a plaintiff's] failure to exhaust." *T.H. v. District of Columbia*, 255 F. Supp. 3d 55, 57 (D.D.C. 2017).[4]

---

[4] DCI attached the October 6, 2020 HOD to its motion to dismiss. *Lemus v. DCI*, ECF No. 15-1. In Lemus's motion to stay, she argues that because DCI presented exhibits outside the pleadings, Federal Rule of Civil Procedure 12(d)

In her amended complaint, Lemus brings a number of claims that would require exhaustion: (1) that the hearing officer erred when he upheld DCI's decision to expel O.C.L.; (2) that the team at O.C.L.'s MDR failed to consider all relevant information required by the IDEA; (3) that the hearing officer erred when he upheld DCI's decision without making finding that the team considered all relevant information; (4) that the hearing officer erred when he failed to determine whether O.C.L.'s IEP and BIP were discussed at his MDR; (5) that the hearing officer erred when determining the decision to expel was proper based on Lemus signing the attendance sheet; and (6) that DCI violated both O.C.L.'s and Lemus's Title VI rights when they failed to provide proper ESL instruction and Spanish translation. Lemus Am. Compl. ¶¶ 93–118.

To survive DCI's motion to dismiss for failure to state of claim, Lemus only needs to plausibly allege that she exhausted her administrative remedies under the IDEA. On the other hand, to prevail DCI "must show . . . that plaintiff[] failed to exhaust IDEA's administrative remedies." *T.H.*, 255 F. Supp. 3d at 60 (emphasis added). The claims presented in the complaint match the claims the hearing officer identified in his October 6, 2020 HOD: that DCI "failed to implement [O.C.L.'s] IEP" for each year he attended, denying him FAPE; that DCI "expelled [O.C.L.] . . . despite [his] objectionable behavior being a manifestation of [his] disability"; and that DCI violated Title VI of the Civil Rights Act. *Lemus v. DCI*, ECF No. 15-1 at 20. The hearing officer identified that the "parties offered conflicting information as to what was considered at the MDR meeting," including "conflicting evidence as to whether the team discussed [O.C.L.'s] IEP and BIP," *id.* at 14, mirroring Lemus's current claim that the team failed to consider all relevant

---

requires that such exhibits either be excluded or the motion to dismiss pursuant to Rule 12(b)(6) be converted to a motion for summary judgment. Lemus Mot. to Stay 4. But a court may consider documents incorporated by reference in the complaint when determining a motion to dismiss, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and the HOD which Lemus appeals is repeatedly referenced in her complaint, *see, e.g.*, Lemus. Am. Compl. ¶¶ 91, 92. Accordingly, this Court will treat the October 6, 2020 HOD as incorporated by reference. *See McNeil v. District of Columbia*, 109 F. Supp. 3d 8, 10 (D.D.C. 2015) (treating a HOD as incorporated by reference in a parent's complaint).

information. DCI's reliance on the HOD is unavailing and the Court rejects its argument that Lemus failed to bring certain claims with a significant level of granularity. Lemus has plausibly alleged that she administratively exhausted her IDEA claims.

### c.   Lemus Has Not Plausibly Alleged Title VI Violations

Lemus claims that DCI's actions violated her and her son's rights under Title VI. Lemus Am. Compl. ¶¶ 119–23. Title VI of the Civil Rights Act states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.  A plaintiff must make a showing of intentional discrimination to succeed on a Title VI claim. *Smith v. Henderson*, 944 F. Supp. 2d 89, 100 (D.D.C. 2013). She may do so either with direct evidence or via the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802 (1973). *Hajjar-Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 125 (D.D.C. 2014). Proving intentional discrimination absent direct evidence of a discriminatory rationale is "notoriously difficult." *Smith*, 944 F. Supp. 3d at 68–69. Intentional discrimination implies "more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). Because Lemus does not invoke the burden-shifting framework and makes no effort to allege that others similarly situated were treated differently, she must plausibly allege that she and

her son were intentionally discriminated against based on their race, color, or national origin to survive DCI's motion to dismiss. *Hajjar-Nejad*, 37 F. Supp. at 125.

Lemus's claims rest on the lack of Spanish translations or instruction provided to her and her son. Lemus Am. Compl. ¶¶ 119–23. In 1970, the Department of Health, Education and Welfare—a predecessor to both the Department of Health and Human Services and the Department of Education—explained that prohibition against national origin discrimination included discrimination against persons with limited English proficiency. *Notice*, 35 Fed. Reg. 11,595 (July 18, 1970). In 2000, the Department of Justice explicitly identified "discrimination against persons with limited English proficiency" as national origin discrimination under Title VI. *Enforcement of Title VI of the Civil Rights Act of 1963—National Original Discrimination Against Persons with Limited English Proficiency*, 65 Fed. Reg. 50,123 (Aug. 16, 2000). The Supreme Court originally agreed in *Lau v. Nichols*. 414 U.S. 563 (1974). But, as the Supreme Court later recognized, *Lau* "interpreted § 601 [of Title VI] itself to proscribe disparate-impact discrimination"—an interpretation that has subsequently been rejected. *Alexander v. Sandoval*, 532 U.S. 275, 285 (2001). In other words, the Court in *Lau* found that that the failure to provide translations to those with limited English proficiency is prohibited by Title VI because it has "the *effect*" of discriminating against students based on national origin, "even though no purposeful design is present." *Lau*, 414 U.S. at 789 (emphasis added). But since that decision, the Court has repeatedly made it plain that discriminatory effect is not enough to maintain a private action under Title VI— purposeful design *is* required. *See Alexander v. Choate*, 469 U.S. 287, 293 (1985) ("Title VI itself directly reache[s] only instances of intentional discrimination.").

This circuit has yet to determine whether Title VI's prohibition against national origin discrimination encompasses differential treatment based on language proficiency. Or stated

differently, it is an open question in this circuit whether differential treatment based on language proficiency is sufficient to show intentional discrimination based on national origin. But this Court is persuaded by the Eighth Circuit's decision in *Mumid v. Abraham Lincoln High School* that differential treatment based on language proficiency is not synonymous with discrimination based on national origin. 618 F.3d 789, 795 (8th Cir. 2010). There, the Eighth Circuit concluded that a "policy of delayed testing [which] did not apply to all foreign-born students in the school district, but only to students categorized as 'English language learners'" did not "facially discriminate based on national origin." *Id.* Similarly, the failure to provide a translator here does not affect all foreign-born individuals, but only those who do not speak English. This reasoning comports with the Supreme Court's mandate that there is no private cause of action under Title VI for disparate impact discrimination. There is no doubt that language can be used as a proxy or a vehicle to intentionally discriminate based on national origin. But the *intent* to discriminate based on race, color, or national origin must be present to succeed on a Title VI claim.

Here, Lemus first alleges that DCI's actions toward her violated Title VI. Lemus has almost no ability to speak English. Lemus Am. Compl ¶ 6. Despite this, she argues, DCI ignored regulations that require schools to provide parents with limited English skills copies of IEPs, evaluations, and other key documents in their native language. *Id.* ¶ 119; *see, e.g.,* 34 C.F.R. § 300.503(c) (requiring that a school, before initiating or changing an IEP, provide notice "in the native language of the parent"); 28 C.F.R. § 42.405(d)(1) (requiring federal funding recipients to communicate with persons with limited English proficiency in their native languages to ensure Title VI compliance). She further alleges that an office assistant who was "neither qualified nor competent to interpret complex technical material" was provided to translate for her at the MDR. *Id.* ¶¶ 120–22.

Fatally, however, Lemus never alleges that DCI intentionally discriminated against her, or that the discrimination she experienced was because of her national origin. Instead, she appears to argue that she was discriminated against because she could not speak English. But, as discussed above, that is not enough to state a claim for intentional national origin discrimination under Title VI. And while Lemus does highlight multiple regulations that would require DCI to provide her translation services, including regulations promulgated under § 602 of Title VI, such regulations do not help her cause. Regulations that prohibit disparate impact are not privately actionable under Title VI. *Sandoval*, 532 U.S. at 293.  Accordingly, Lemus has failed to state a claim.

Lemus also raises a Title VI claim on behalf of her son. She alleges that O.C.L. was placed in an eighth-grade math class conducted solely in English, even though, at that point, he was functioning at a second-grade math level. Lemus Am. Compl. ¶ 120. She alleges that O.C.L. required ESL instruction and that by the time he was expelled, O.C.L. did not understand most classroom instruction. *Id.* ¶ 121. But despite his needs, she alleges that O.C.L. received no ESL instruction during his last semester at DCI. *Id.* ¶ 121. Lemus alleges that O.C.L.'s IEP Team was aware of evaluations that indicated his conservational level, while limited in both English and Spanish, was better developed in Spanish. *Id.* ¶ 102. And her complaint alleges that once O.C.L. began at DCI, his benchmark testing scores declined. *Id.* ¶ 106. Again, this Court finds that Lemus has failed to plausibly allege a Title VI violation. Her complaint makes no allegations that DCI or O.C.L.'s IEP team intended to discriminate against him based on his national origin, and language proficiency is not synonymous with national origin. Accordingly, she has failed to state a Title VI claim on behalf of O.C.L.

### ii. Lemus's Motion To Stay

In response to DCI's motion to dismiss, Lemus filed a motion to stay all proceedings. Lemus Mot. to Stay. Her motion to stay relied on two major contentions: (1) that Rule 12(d) required the HOD to either be excluded or the motion to dismiss to be treated as a motion for summary judgment, *id.* at 4, and (2) that various civil rules, local rules, and federal regulations required DCI to file the administrative record before filing a dispositive motion during an administrative appeal. As discussed above, the HOD was incorporated in Lemus's complaint by reference. Whatever the merits of Lemus's other arguments, they are no longer relevant because the motion to dismiss will be denied in regard to the administrative appeal claims and there are no dispositive motions currently pending. Accordingly, Lemus's motion to stay will be **DISMISSED AS MOOT**.

### B. *DCI v. Lemus*

DCI's separate action about the HOD determination, the FAPE action, suffers from similar procedural issues. Lemus was not served within the proper Rule 4(m) period, and so moves to quash the complaint or to dismiss for lack of personal jurisdiction. Lemus Mot. to Dismiss 1. Because this Court finds good cause for the delay, it will **DENY** Lemus's motion to dismiss for lack of personal jurisdiction. Next, DCI moved for a stay of the HOD decision pending appeal. DCI Mot. to Stay. This Court will **ORDER** Lemus's response within fourteen (14) days and will **ADMINISTRATIVELY STAY** the October 26, 2020 HOD pending its determination of the motion to stay.

### i. Lemus's Motion To Dismiss

DCI was required to effect service of process on Lemus ninety days after its complaint was filed, on April 25, 2021. Instead, Lemus was served on April 29, 2021. *See DCI v. Lemus*, ECF No. 5. Accordingly, this Court should dismiss the action unless DCI can show "good cause for the

failure" to serve process. Fed. R. Civ. P. 4(m). The advisory notes to Rule 4(m) indicate that good

cause relief "may be justified, for example, if the applicable statute of limitations would bar the

refiled action, or if the defendant is evading service or conceals a defect in attempted service."

Fed. R. Civ. P. 4, Advisory Committee Note. In the D.C. Circuit, good cause *may* exist "where a

statute of limitations would bar refiling the action," where a *pro se* plaintiff makes an honest

mistake, or where a plaintiff has been diligent in correcting any service deficiencies. *Morrissey v.*

*Mayorkas*, 17 F.4th 1150, 1160 (D.C. Cir. 2021). But courts are not *required* to find good cause

and excuse the failure to serve process within ninety days merely because the statute of limitations

case run out. *Id.* at 1157–58 (affirming a district court's decision to deny plaintiff a extension to

cure service, despite the statute of limitations' expiration).

Here, the HOD was issued on October 26, 2020. DCI Compl. ¶ 59. IDEA appeals have a

90-day appeals deadline. 34 C.F.R. § 303.448(b). DCI filed its complaint on January 25, 2021, the

*last* day of the limitations period, so the statute of limitations applicable to DCI's appeal has ran

out. *See* DCI Compl. This is an equitable factor that supports a finding of good cause. DCI's

attorneys also repeatedly attempted to secure a waiver of service from Lemus's attorney, and

Lemus did not reply. *DCI v. Lemus*, ECF No. 11 at 7. DCI's diligence and attempts to secure a

waiver similarly support a finding of good cause. Finally, there is no doubt that Lemus was aware

of the lawsuit—her attorney filed a notice of a pending related case on March 22, 2021, within the

90-day service of process deadline. *See Lemus v. DCI*, ECF No. 12. Thus, Lemus would not be

prejudiced by an extension. Considering the equitable factors at hand, the Court finds good cause

to extend the deadline the extra few days DCI took to effect service of process and finds that it has

personal jurisdiction over Lemus.[5]

---

[5] Lemus's motion to quash and dismiss makes multiple references to the merits of DCI's complaint, including alleging that it would "not survive summary judgment," Lemus Mot. to Dismiss 8, and that the allegations "are not sufficient

    *ii.  DCI's Motion to Stay*

Finally, DCI moves to stay the October 26, 2020 HOD pending administrative appeal. DCI

Mot. to Stay. DCI makes a number of arguments and raises the specter of mootness. *Id.* at 8. Lemus

has not had an opportunity to respond, because responding would mean waiving any objection

based on personal jurisdiction. Because the Court *will* exercise personal jurisdiction over Lemus,

she will be required to respond to the motion to stay. This Court will order that Lemus reply to

DCI's motion to stay within fourteen (14) days and will **ADMINISTRATIVELY STAY** the

October 26, 2020 HOD pending this Court's decision on the motion to stay.

## IV. CONCLUSION

For the foregoing reasons, in *Lemus v. DCI*, the Court will **GRANT IN PART** and **DENY**

**IN PART** DCI's motion to dismiss: Lemus's claim that DCI violated her and her son's Title VI

rights, Am. Compl. ¶ 119–123, will be accordingly **DISMISSED** for failure to state a claim and

all other claims will remain. The Court will further **DISMISS AS MOOT** Lemus's motion to stay

pending the filing of the administrative record, and **GRANT** Lemus's motion to file a late reply.

Finally, the Court will **ORDER** DCI to respond to the amended complaint and **ORDER** the parties

to propose a briefing and discovery schedule.

In *DCI v. Lemus*, the Court will **DENY** Lemus's motion to dismiss, **ORDER** Lemus to

reply to DCI's motion to stay the HOD pending appeal, and **ADMINISTRATIVELY STAY** the

October 26, 2020 HOD pending this Court's decision on the stay. The Court will further **ORDER**

Lemus to respond to the complaint and **ORDER** the parties to propose a briefing and discovery

schedule.

---

to show that the [hearing officer] erred," *id.* at 2. At no point does she reference Rule 12(b)(6), and at no point does Lemus claim that DCI has failed to *allege* a claim. Her attorney represents in the motion that she enters an appearance "for the limited purpose of challenging jurisdiction over Mrs. Lemus." *Id.* at 2. Accordingly, this Court will not address these potential Rule 12(b)(6) arguments or treat this as a motion to dismiss pursuant to Rule 12(b)(6).

A separate Order in each case will follow.


Date: February 10, 2022

                                       Hon. Royce C. Lamberth
                                       United States District Judge